981 So.2d 609 (2008)
Dany Katz GILBERT and Lawrence Gilbert, Appellants,
v.
FLORIDA POWER & LIGHT COMPANY, a Florida corporation, Appellee.
Nos. 4D06-4645, 4D07-1274.
District Court of Appeal of Florida, Fourth District.
May 14, 2008.
*611 John N. Buso, West Palm Beach, for appellants.
Rebecca Mercier Vargas and Jane Kreusler-Walsh of Kreusler-Walsh, Compiani & Vargas, P.A., West Palm Beach, and Cheryl A. Kempf of Florida Power & Light, Juno Beach, for appellee.
SHAHOOD, C.J.
Dany Katz Gilbert and Lawrence Gilbert ("Gilbert") appeal three non-final orders in favor of the Florida Power & Light Company ("FPL"). The Gilberts also appeal a separate final judgment in favor of FPL. The issues arise from the removal and payment of such removal of an electric transformer owned by FPL. We consolidate these appeals (case numbers 06-4645 and 07-1274) for purposes of this opinion, affirm two of the non-final orders, reverse the remaining non-final order, and reverse and remand the final judgment.
The Gilberts live in a home next to an easement which FPL owns. On the easement is an electrical transformer that was emitting noise. On May 4, 2004, the Gilberts filed a complaint against FPL, alleging that the sounds from the transformer were "making it virtually impossible for the Plaintiffs to sleep in the subject home, and as a direct result of the sounds the Plaintiffs are suffering both physical and mental damage." The Gilberts further alleged "a clear legal right to use their property without the harm that the transformer is causing them." In relief, the Gilberts sought "a temporary and permanent injunction enjoining FPL from using the offending transformer as well as such other and further relief the Court deems just and proper."
An evidentiary hearing was held on the Gilberts' motion for temporary injunctive relief. At the hearing Dany Gilbert testified that a transformer was placed on the property when she closed on the home. The transformer was eventually replaced for a larger one with a bigger capacity and it made a lot of noise.
On October 18, 2004, the trial court granted the Gilberts' motion and required FPL to move the transformer at the Gilberts' expense. The court reserved jurisdiction to determine the amount of "the land form bond."
The Gilberts filed a motion to set the amount of the bond. After an evidentiary hearing, the trial court set the bond at $16,712 and ordered the Gilberts to post this amount, which they paid into the court registry.
On May 30, 2006, the Gilberts filed a motion for leave to amend the complaint in order to add a count for damages. The trial court denied this motion without explanation on July 12, 2006.
The Gilberts next filed a Motion to Establish a Schedule to Move the Transformer. The trial court granted this motion and ordered FPL to move the transformer within ninety days.
On July 31, 2006, the Gilberts filed another complaint against FPL seeking recovery for damages to the property and for personal injuries.
In response, FPL filed a motion for judgment on the pleadings, arguing that the second lawsuit was barred by the rule against splitting a cause of action. A hearing was conducted on the motion and the trial court granted the motion. The trial court subsequently filed an amended order granting the motion and entered a final judgment.
*612 FPL moved the transformer and, in October of 2006, filed a motion to compel payment of the relocation cost. After a hearing, the trial court granted the motion, directing the clerk to pay FPL the $16,712 deposited in the court registry.
The Gilberts first appeal the following three non-final orders by the trial court: the order granting the Gilberts' motion for temporary injunctive relief, which required the Gilberts to pay for the removal; the denial of the Gilberts' motion for leave to amend the complaint in order to add a count for damages; and the order granting FPL's motion to compel payment of the relocation cost. We reverse the order denying the Gilberts' motion for leave to amend and affirm the remaining orders.
Refusal to allow an amendment is an abuse of the trial court's discretion "unless it clearly appears that allowing the amendment would prejudice the opposing party, the privilege to amend has been abused, or amendment would be futile." State Farm Fire & Cas. Co. v. Fleet Fin. Corp., 724 So.2d 1218, 1219 (Fla. 5th DCA 1998); Carr ex rel. Estate of Grushka v. PersonaCare of Pompano E., Inc., 890 So.2d 288, 289 (Fla. 4th DCA 2004). None of the above factors are present here. The motion to amend was made before the transformer was moved and included a viable claim for damages. We find that the trial court abused its discretion in not allowing the Gilberts to amend their complaint. See Ohio Cas. Ins. Co. v. MRK Constr., Inc., 602 So.2d 976, 978 (Fla. 2d DCA 1992) ("The law favors the trial of cases on their merits and, therefore, a liberal policy of allowing litigants freedom to amend their pleadings exists.").
The remaining non-final orders concern the payment for the relocation of the transformer in satisfaction of the bond for the injunction. The trial court correctly found that the Gilberts must pay this expense based on FPL's tariff, which regulates the provision of electric services. The relevant tariff provides:

5.3 Relocation of Company's Facilities. When there is a change in the Customer's operation or construction which, in the judgment of the Company, makes the relocation of Company's facilities necessary, or if such relocation is requested by the Customer, the Company will move such facilities at the Customer's expense to a location which is acceptable to the Company.
"It is well established that a limitation of liability contained in a tariff is an essential part of the rate, and that the consumer is bound by the tariff regardless of his knowledge or assent thereto. Tariffs are even recognized as having the force and effect of law." Landrum v. Fla. Power & Light Co., 505 So.2d 552, 554 (Fla. 3d DCA 1987) (internal citations omitted); see also Fla. Power Corp. v. Cont'l Testing Labs., Inc., 243 So.2d 195, 197 (Fla. 4th DCA 1971) (holding that a power company's tariff regulation, "having been approved by the Public Service Commission, when enforced without discrimination is binding upon the consumer unless it is plainly unreasonable or outrageous in its general operation").
The trial court had initially set the bond on the basis that it was to pay for the relocation expenses as required by the tariff:
[T]his Court hereby enters an Order Granting Plaintiffs' Motion for Temporary Injunctive Relief, directing the Defendant to remove and relocate the transformer from Plaintiffs' property at the reasonable expense to be borne by the Plaintiff conditional upon the Plaintiff posting a bond to cover the cost of the move.

*613 The Court reserves ruling as to the amount of the land form bond which needs to be posted by Plaintiff pending further testimony.
After the bond was set and FPL relocated the transformer, FPL filed a motion to compel payment, which the trial court correctly granted, explaining:
The Court finds that the Order Granting Temporary Injunctive Relief (the Court construes it as a permanent injunction) specifically required the Plaintiffs to bear the cost of removing and relocating the transformer as mandated by the Florida Power & Light Company tariff.
The trial court specifically stated in its order on the temporary injunction that the purpose of the bond was to cover the cost of relocating the transformer and that this cost was to be paid for by the Gilberts based on the tariff. We hold that the tariff controls in this situation, requiring the Gilberts to pay the relocation expenses.
The Gilberts' second appeal concerns the trial court's order of final judgment in which it found that the Gilberts impermissibly split their cause of action and therefore could not bring a separate cause of action for damages.
The trial court found, in its Amended Order granting FPL's Motion for Judgment on the Pleadings:
4. The rule against splitting a cause of action requires that all damages sustained by a party as a result of a single wrongful act are lost if not claimed or recovered in one action. McKibben v. Azmora, 358 So.2d 866 (Fla. 3rd DCA 1978). "This rule is found upon the plainest and most substantial justice namely, that litigation should have an end and that no person should be unnecessarily harassed with multiplicity of suits". Gannon v. Staturn, [151 Fla. 793] 10 So.2d 432 (Fla.1942).
5. In this case, the Plaintiffs have impermissibly split their cause of action in that any alleged damages they are seeking as a result of the transformer noise, should have been brought in Case No. CA 04-000465.
The rule against splitting a cause of action "provides that: `[A]s a general rule the law mandatorily requires that all damages sustained or accruing to one as a result of a single wrongful act must be claimed and recovered in one action or not at all.'" Tyson v. Viacom, Inc., 890 So.2d 1205, 1210-11 (Fla. 4th DCA 2005) (citations omitted) (en banc). The concept of impermissible splitting a cause of action is interrelated to the concept of res judicata. Id. at 1211 ("Res judicata and impermissible splitting of causes of action are not interchangeable concepts barring the bringing of claims. . . . if res judicata is not a bar to the bringing of a claim, impermissible splitting of causes of action is not either."). In order for res judicata to bar subsequent claims, four identities must be established: "`(1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the actions; and (4) identity of the quality or capacity of the persons for or against whom the claim is made.'" Freehling v. MGIC Fin. Corp., 437 So.2d 191, 193 (Fla. 4th DCA 1983) (citation omitted).
The facts in the instant case violate neither the rule against splitting a cause of action nor res judicata. In the first suit, the Gilberts sought to put an end to the noise by forcing the removal of the transformer through an injunction. In the second suit, the Gilberts sought to recover damages caused by the noise from the transformer and its subsequent removal. This case is similar to Accardi v. Hillsboro *614 Shores Improvement Ass'n, 944 So.2d 1008 (Fla. 4th DCA 2005), and Inter-Active Services, Inc. v. Heathrow Master Ass'n, 809 So.2d 900 (Fla. 5th DCA 2002).
In Accardi, this court found that an action for nuisance and trespass was not barred by a previous action for abatement, injunction, and declaratory judgment regarding the use of a property easement because the facts and evidence necessary to prove both claims were not identical. Id. at 1012. The first lawsuit in Accardi dealt with a homeowner suing an association that owned a lot next to the homeowner's lot. The association's lot contained an access point to the beach and was subject to certain covenants restricting its use. The homeowner successfully sued the association for violations of the covenant. Subsequently, the homeowner filed a complaint alleging causes of action for nuisance and trespass, seeking monetary damages. The trial court granted a motion to dismiss the complaint based on collateral estoppel and/or res judicata. Id. at 1010-11. Upon review, this court reversed, finding that res judicata and collateral estoppel did not bar the homeowner's suit for damages. Id. at 1012. This court explained that there was not a shared identity of cause of action or identity in the thing sued for, as the injunctive action was brought to prevent the continued violation of the restrictive covenant, whereas the subsequent suit was for damages resulting from the violation of the restrictive covenant. See also Pumo v. Pumo, 405 So.2d 224, 226 (Fla. 3d DCA 1981) ("[A] request for different relief does not prevent the first proceeding from serving as a bar to a second action.").
Similarly, in Inter-Active, the court distinguished between an injunctive action and a breach of contract action. The court reasoned, "[t]he facts and evidence necessary to prove Inter-Active's breach of contract claim are different from the facts and evidence which were necessary to prove Inter-Active's claim for injunctive relief and thus, an identity of the `thing sued for' does not exist in this case." Id. at 902-03. The injunctive action was concerned with a threatened breach of contract between the parties, whereas the second suit was for damages as a result of the actual breach of the contract. Id. at 902.
Like Accardi and Inter-Active, the facts necessary to support the injunction, i.e., the Gilberts' inability to move or quiet the transformer by themselves and that the FPL-owned transformer violates the public interest, are not necessarily required for the proof of damages, i.e., impact of the noise from the transformer on the Gilberts' physical and mental health as well as property damages. The two complaints thus do not meet the required identities of the thing sued for and cause of action that must be established for a res judicata and/or impermissible splitting of the cause of action bar.
Additionally, under the rule against splitting a cause of action, a new claim for damages is not barred if the underlying cause of action had not accrued at the time of filing the previous lawsuit. Taylor v. Orlando Clinic, 555 So.2d 876, 878 (Fla. 5th DCA 1989) (action for wrongful death does not accrue until death, whereas action for personal injury negligence arises during life). Part of the Gilberts' claim includes damages arising from the relocation of the transformer and future personal injury losses, which did not arise at the time of filing the injunction.
Moreover, the purpose behind the rule against splitting a cause of action is:
[F]ounded on the plainest and most substantial justice-namely, that litigation should have an end, and that no person should be unnecessarily harassed with a *615 multiplicity of suits. If the first suit is effective and available, and affords ample remedy to the plaintiff, the second suit is unnecessary and consequently vexatious.
Mims v. Reid, 98 So.2d 498, 501 (Fla.1957). The Gilberts' first suit was effective in removing the transformer, but did not repair the physical, mental, and property damage allegedly caused by the transformer, necessitating the second suit.
We hold that the Gilberts were entitled to bring their second cause of action against FPL. Therefore, we reverse the final judgment of the trial court and remand with directions that the Gilberts' cause of action for damages be reinstated. Reversal on this issue negates the need to allow the Gilberts to file an amended complaint, although if they had initially been allowed to amend, we would not have needed to address the remaining issues in detail.
Affirmed in part; Reversed in part and Remanded.
MAY, J., concurs.
POLEN, J., concurs in part and dissents in part with opinion.
POLEN, J., concurring in part and dissenting in part.
I agree with that part of the majority opinion which reverses the trial court's denial of appellants' motion for leave to amend and also reverses the dismissal of their second complaint. I respectfully dissent, however, as to the majority's affirmance of the trial court order finding FPL's tariff 5.3 Relocation of Company's Facilities applies to the facts of this case requiring appellants to pay FPL the costs of moving the transformer. There is nothing in the facts which suggests the move was caused by changes in the "customer's operation or construction," and it does not appear to allow for situations, as here, where FPL installs a newer, noisier transformer next to existing residential property. In any event, since appellants are to have an opportunity to plead and prove damages on remand, I think this issue should be decided by the jury in the proceedings to follow.